FILED
2012 Sep-17  PM 01:47
U.S. DISTRICT COURT
N.D. OF ALABAMA

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION**

| | | |
|---|---|---|
| **BLACK WARRIOR RIVERKEEPER, INC.; FRIENDS OF HURRICANE CREEK; NELSON BROOKE; JOHN WATHEN,** | ) ) ) ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **vs.** | ) | **CASE NO.  7:11-CV-3307-SLB** |
| | ) | |
| **BLACK WARRIOR MINERALS, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION

This case is presently pending before the court on defendant's Motion to Dismiss, (doc. 11),[1] and plaintiffs' Motion for Leave to File First Amended/Supplemental Complaint, (doc. 16).  Plaintiffs – Black Warrior Riverkeeper, Inc., Friends of Hurricane Creek, Nelson Brooke, and John Wathen – have sued defendant, Black Warrior Minerals, Inc., alleging defendant, which operates a coal mine, violated "New Source Performance Standards . . . by discharging pollutants from point sources into Hurricane Creek, a tributary of the Black Warrior River, and into unnamed tributaries of Hurricane Creek." (Doc. 1 ¶ 18.) Defendant has moved to dismiss plaintiffs' Complaint pursuant to Fed. R. Civ. P. 12(b)(6).  However, defendant asks the court to consider evidence outside the Complaint; therefore, the court converted the motion to a motion for summary judgment.  Upon consideration of the record,

---

[1]Reference to a document number, ["Doc. ___"], refers to the number assigned to each document as it is filed in the court's record.

the submissions of the parties, the arguments of counsel, and the relevant law, the court is of the opinion that defendant's Motion to Dismiss, (doc. 11), is due to be granted.  Plaintiff's Motion for Leave to File First Amended/Supplemental Complaint, (doc. 16), will be denied.

## I.  <u>SUMMARY JUDGMENT STANDARD</u>

Defendant has moved to dismiss plaintiffs' Complaint for failure to state a claim upon which relief can be granted.  It attached evidence to its Motion to Dismiss; therefore the court converted the Motion to Dismiss to a Motion for Summary Judgment.  (*See* doc. 12.)

Pursuant to Fed. R. Civ. P. 56(a), summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).  Once the moving party has met its burden, the non-moving party must go beyond the pleadings and show that there is a genuine issue of fact for trial.  *See Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986).   A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A)  citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

> (B)  showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1); *see also Clark*, 929 F.2d at 608 ("it is never enough simply to state that the non-moving party cannot meet its burden at trial").

In deciding a motion for summary judgment, the court's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249.  "[C]ourts are required to view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the [summary judgment] motion.'"  *Scott v. Harris*, 550 U.S. 372, 378 (2007)(quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655(1962) (per curiam)).  Nevertheless, the non-moving party "need not be given the benefit of every inference but only of every reasonable inference."  *Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1282 (11th Cir. 1999)(citing *Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988)); *see also Scott*, 550 U.S. at 380 ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.").

## II.  STATEMENT OF FACTS

According to their Complaint, plaintiffs are individuals and organizations seeking to protect the Black Warrior River and its tributaries, including Hurricane Creek.  (Doc. 1 ¶¶

7-12.)  They bring this action against defendant Black Warrior Mineral, which owns and operates Fleetwood Mine, a coal mine in Tuscaloosa County, Alabama.  (*Id*. ¶ 13.)

In 1982, pursuant to 33 U.S.C. § 1316, the Administrator of the U.S. Environmental Protection Agency [EPA] promulgated New Source Performance Standards [NSPS] for "new source coal mines."  *See* 50 Fed. Reg. 41296-01.  The EPA proposed amendments to the NSPS on May 4, 1984.  *Id*.  These amendments became effective on November 22, 1985. *Id*.  The construction of the Fleetwood Mine began after May 4, 1984.  (*Id*.)

The Alabama Department of Environmental Management ("ADEM") issued defendant a National Pollutant Discharge Elimination System ("NPDES") individual permit, authorizing defendant to discharge into Hurricane Creek and an unnamed tributary to Hurricane Creek.  (Doc. 11-1 at 1.)  The NPDES permit contains discharge limitations and requirements for monitoring and reporting discharges.  (*See generally* doc. 11-1.)

On or about September 2, 2011, plaintiffs served defendant with notice of alleged violations of NSPS and defendant's NPDES permit and of plaintiffs' intent to sue.  (Doc. 13-1 at 1.)  This notice stated:

> Black Warrior Riverkeeper and Friends of Hurricane Creek (collectively "Waterkeepers"), together with individuals John Wathen and Nelson Brooke, intend to file a lawsuit under § 505 of the Clean Water Act ("CWA"), 33 U.S.C. § 1365, against Black Warrior Minerals, Inc. ("BWM") for violations of the CWA, 40 C.F. R. § 434.35, and NPDES Permit No. AL0071358 . . . .  Waterkeepers, Brooke and Wathen further notify you that . . . they intend to file a lawsuit against BWM under § 520 of the Surface Mining Control and Reclamation Act ("SMCRA"), 30 U.S.C. § 1270, for violations of Ala. Admin. Code r. 880-X-10C-.13(5) . . . .  Finally, Waterkeepers, Wathen and Brooke notify you that they intend to file a lawsuit

against BWM under the Alabama Surface Mining Control and Reclamation Act ("ASMCRA), Ala. Code § 9-16-95, for violations of ASMCRA and Ala. Admin. r. 880-X-10C-.13(5).

These violations occurred at the Fleetwood Mine located in Tuscaloosa County, Alabama (Township 21 South, Range 8 West, Sections, 3 through 9 and 16 through 18; and Township 20 South, Range 8 West, Section 34). Based upon information and belief, BWM owns and operates the Fleetwood Mine where these violations are occurring. Waterkeepers, Brooke and Wathen provide this notice pursuant to 40 C.F. R. Part 135, Subpart A, 30 C.F. R. § 700.13, and Ala. Admin. Code r. 880-X-2A-.09.

### I. Clean Water Act[2]

BWM is in violation of §§ 301, 306 and 402 of the CWA (22 U.S.C. §§ 1311, 1316 and 1342). These laws mandate that the Fleetwood Mine shall not discharge pollutants to waters of the United States except in compliance with applicable New Source Performance Standards ("NSPS") and any permit issued pursuant to the National Pollutant Discharge Elimination System ("NPDES").

. . .

BWM is in violation of the CWA by operating the Fleetwood Mine in a manner that discharges pollutants to waters of the United States, namely Hurricane Creek, a tributary of the Black Warrior River, in excess of the limits specified in 40 C.F. R. § 434.35 and NPDES Permit no. AL0071358.

. . .

The discharge violations . . . demonstrate a continuing pattern of pollution at BWM's Fleetwood Mine which degrades and threatens waters of the United States in violation of the CWA.

---

[2]Plaintiffs also notified defendant that they intended to bring claims for violations of the Surface Mining Control and Reclamation Act, 30 U.S.C. § 1270, and the Alabama Surface Mining Control and Reclamation Act, Ala. Code § 9-16-95. (Doc. 13-11 at 15.) These claims are the subject of plaintiffs' Motion for Leave to File First Amended/Supplemental Complaint. (Doc. 16.)

(Doc. 13-1 at 1-2, 14.)  The notice listed a number of violations of the NSPS and the NPDES permit; the violations of the NSPS are duplicative of the violations of the NPDES permit. (*Compare id.* at 2-7 *with id.* at 8-14.)

Plaintiffs filed this case on September 13, 2011.  (Doc. 1.)

### III.  DISCUSSION

Defendant has moved to dismiss plaintiffs' claims for failure to comply with the 60-day notice requirement of 22 U.S.C. § 1365(b) and/or their failure to allege that defendant violated its NPDES permit limitations.  It also contends that plaintiffs cannot assert a claim under the CWA based on monthly averages and, therefore, to the extent plaintiffs' claim is based on excess discharges based on monthly averages, such claim must be dismissed.

The issue in this case appears to one of first impression:  Can plaintiffs proceed under an exception to the waiting period for actions under 33 U.S.C. § 1365(b) for claims under 33 U.S.C. § 1316, regulating new sources, when the "new source" has a NPDES permit?  The court holds that plaintiffs cannot proceed under the exception to 1365(b) for violations of § 1316 when the discharger has a NPDES permit.

"The Federal Water Pollution Control Act, commonly known as the Clean Water Act [CWA], 86 Stat. 816, as amended, 33 U.S.C. § 1251 et seq., is a comprehensive water quality statute designed to 'restore and maintain the chemical, physical, and biological integrity of the Nation's waters.'  § 1251(a)."  *PUD No. 1 of Jefferson County v. Washington Dept. of Ecology*, 511 U.S. 700, 704 (1994).

> Section 402 authorizes the establishment of the National Pollutant Discharge Elimination System (NPDES), under which every discharger of pollutants is required to obtain a permit. The permit requires the discharger to meet all the applicable requirements specified in the regulations issued under [33 U.S.C. §§ sections 1311, 1312, 1316, 1317, 1318, and 1343]. Permits are issued by either the Administrator or state agencies that have been approved by the Administrator. The permit "transform[s] generally applicable effluent limitations . . . into the obligations (including a timetable for compliance) of the individual discharger . . . ." *EPA v. California ex rel. State Water Resources Control Board*, 426 U.S. 200, 205 (1976).

*EPA v. National Crushed Stone Ass'n*, 449 U.S. 64, 71 (1980)(footnote and parallel citations omitted).

Section 1316(e) provides, "After the effective date of standards of performance promulgated under this section, it shall be unlawful for any owner or operator of any new source to operate such source in violation of any standard of performance applicable to such source." 33 U.S.C. 1316(e). "The term 'new source' means any source, the construction of which is commenced after the publication of proposed regulations prescribing a standard of performance under this section which will be applicable to such source, if such standard is thereafter promulgated in accordance with this section." *Id*. (a)(2). The Fleetwood Mine was constructed after the publication of the proposed regulations governing mining. 50 Fed. Reg. 41296-01. Therefore, defendant owns a "new source" that plaintiffs allege violated a standard of performance.

The CWA provides for enforcement of effluent limits by private citizens:

[A]ny citizen may commence a civil action on his own behalf –

7

(1) ***against any person*** . . . ***who is alleged to be in violation of*** (A) ***an effluent standard or limitation under this chapter*** or (B) an order issued by the Administrator or a State with respect to such a standard or limitation, or

(2)   against the Administrator where there is alleged a failure of the Administrator to perform any act or duty under this chapter which is not discretionary with the Administrator.

The district courts shall have jurisdiction, without regard to the amount in controversy or the citizenship of the parties, ***to enforce such an effluent standard or limitation***, or such an order, or to order the Administrator to perform such act or duty, as the case may be, and to apply any appropriate civil penalties under section 1319(d) of this title.

33 U.S.C. § 1365(a)(emphasis added).  Also –

No action may be commenced –

(1) under subsection (a)(1) of this section –

(A)  prior to sixty days after the plaintiff has given notice of the alleged violation (i) to the Administrator, (ii) to the State in which the alleged violation occurs, and (iii) to any alleged violator of the standard, limitation, or order, or

(B)   if the Administrator or State has commenced and is diligently prosecuting a civil or criminal action in a court of the United States, or a State to require compliance with the standard, limitation, or order, but in any such action in a court of the United States any citizen may intervene as a matter of right.

(2) under subsection (a)(2) of this section prior to sixty days after the plaintiff has given notice of such action to the Administrator,

***except*** that such action may be brought ***immediately*** after such notification in the case of an action under this section respecting a violation of sections ***1316*** and 1317(a) of this title.  . . .

*Id.* (b).  These "notice and delay requirements . . . were designed by Congress 'to strike a balance between encouraging citizen enforcement of environmental regulations and avoiding burdening the federal courts with excessive numbers of citizen suits.'"  *Hallstrom v. Tillamook County*, 493 U.S. 20, 29 (1989).  "The notice requirements are strictly construed to give the alleged violator the opportunity to correct the problem before a lawsuit is filed. If a plaintiff fails to comply with the notice requirement where it is applicable, the district court is required to dismiss the action."  *Kendall v. Thaxton Road LLC*, No. 10–14634, 2011 WL 3903400, *3 (11th Cir. Sept. 7, 2011)(quoting *Nat'l Parks and Conservation Ass'n v. Tenn. Valley Auth.*, 502 F.3d 1316, 1329 (11th Cir. 2007); *Nat'l Envtl. Found. v. ABC Rail Corp.*, 926 F.2d 1096, 1097-98 (11th Cir. 1991))(internal quotations and citations omitted)(unpublished).

Defendant contends that plaintiffs' Complaint is due to be dismissed because plaintiffs filed their Complaint eleven days after sending notice.  Plaintiffs argue that their claim is based on violations of the NSPS pursuant to 33 U.S.C. § 1316, which are excepted from the delay provisions of § 1365(b).  The court notes that the definition of "effluent standard or limitation under this chapter," 33 U.S.C. § 1365(a)(1)(A), includes a "standard of performance under section 1316," 33 U.S.C. § 1365(f)(3).  However, the Supreme Court has held that "a [citizen] suit against a [NPDES] permit holder will necessarily be brought under the definition in [§ 1365 (f)(6)]" – defining "effluent standard or limitation" as "a permit or condition thereof issued under section 1342 of this title, which is in effect under this

chapter," 33 U.S.C. § 1365(f)(6).  *EPA v. California ex rel. State Water Resources Control Bd.*, 426 U.S. 200, 223-24.  In other words, a permit-holding discharger's "liability . . . must be determined in light, not of [standard and limitations for new source mines] but of the conditions of [its NPDES] permit."  *States Legal Foundation, Inc. v. Eastman Kodak Co.*, 809 F. Supp. 1040, 1045 (W.D.N.Y. 1992).

The court can find no reported decision of a citizen suit against a permit-holding discharger alleging a violation of a § 1316 standard of performance.  Given the language of the Supreme Court that a citizen suit against a permitted discharger must proceed under § 1365(f)(6), this court is bound to find that the notice and delay provisions of § 1365(b) apply.  *See McGinley v. Houston*, 361 F.3d 1328, 1331 (11th Cir. 2004)("A circuit court's decision binds the district courts sitting within its jurisdiction while a decision by the Supreme Court binds all circuit and district courts.");  *Jaffree v. Wallace*, 705 F.2d 1526, 1532 (11th Cir. 1983)("Federal district courts and circuit courts are bound to adhere to the controlling decisions of the Supreme Court."), *aff'd*, 472 U.S. 38 (1985).

Therefore, the court finds defendant's Motion to Dismiss/Motion for Summary Judgment, (doc. 11), is due to be granted.  Plaintiff's claims based on violations of NSPS in the CWA will be dismissed with prejudice.

**MOTION TO AMEND**

While defendant's Motion to Dismiss/Motion for Summary Judgment was pending, plaintiffs filed a Motion for Leave to File First Amended/Supplemental Complaint.  (Doc.

16.)  In their Motion, plaintiffs asks the court for leave to amend his CWA claim and to add claims under the federal Surface Mining Control and Reclamation Act [SMCRA], 30 U.S.C. § 1270(a), and the Alabama Surface Mining Control and Reclamation Act [ASMCRA], Ala. Code § 9-16-95(a).   Because plaintiffs' First Amended/Supplemental Complaint contains their claim based on violations of the NSPS, their Motion for Leave will be denied; however, this denial will be without prejudice to plaintiffs' right to bring claims under the SMCRA and ASMCRA.

Nevertheless, the court notes that both the SMCRA and the ASMCRA contain provisions that prohibit citizen suits if Alabama "has commenced and is diligently prosecuting a civil action to require compliance with the provisions of this article, or any rule, regulation, order, or permit issued pursuant to this article."  Ala. Code § 9-16-95(b)(1)(b); *see also* 30 U.S.C. § 1270(b)(1)(B)("No action may be commenced – (1) under subsection (a)(1) of this section – . . . (B) if the Secretary or the State has commenced and is diligently prosecuting a civil action in a court of the United States or a State to require compliance with the provisions of this chapter, or any rule, regulation, order, or permit issued pursuant to this chapter . . . .").

In their proposed First Amended/Supplemental Complaint, plaintiffs allege that Alabama regulations require "discharges of water from areas disturbed by mining activities shall be made in compliance with all applicable  Federal water quality effluent limitation guidelines for coal mining."  (Doc. 16-1 ¶¶ 24, 31 [quoting Ala. Admin. Code r.880-X-10C-

11

.13(5)] [internal quotations and omissions omitted].)  ADEM has filed suit against defendant alleging defendant has violated its NPDES Permit for the Fleetwood Mine.  (*See* doc. 14-1.) Therefore, prior to refiling its SMCRA and ASMCRA claims, plaintiffs shall determine whether ADEM's action constitutes a diligent prosecution to require compliance with the same water standards.

## CONCLUSION

For the foregoing reasons, the court is of the opinion that plaintiffs' claims under the CWA are barred by their failure to comply with the notice and delay requirements of 33 U.S.C. § 1365(b), and, therefore, their CWA claim will be dismissed.  Plaintiff's Motion for Leave to File First Amended/Supplemental Complaint, containing the same CWA claim will be denied.  An Order granting defendant's Motion to Dismiss, (doc. 11), and denying plaintiff's Motion for Leave to File First Amended/Supplemental Complaint will be entered contemporaneously with this Memorandum Opinion.

**DONE**, this 17th day of September, 2012.

SHARON  LOVELACE  BLACKBURN
CHIEF UNITED STATES DISTRICT JUDGE